# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LEONA P. CLENDANIEL, Successor
Administratrix WWA of the Estate of Robert
D. Clendaniel, LEONA P. CLENDANIEL,
Individually, and ALICE M. METZNER,
Individually,

          Plaintiffs,

      v.

BAYHEALTH MEDICAL CENTER, INC.,
a Delaware corporation, and MILFORD
CENTER, LLC, a Delaware limited liability
company,

          Defendants.

: C.A. No. K20C-01-003 WLW

Submitted: October 23, 2020
Decided: December 29, 2020

## ORDER

Defendant Bayhealth Medical Center, Inc.'s
Motion for Partial Dismissal.
*Denied.*

William D. Fletcher, Jr., Esquire of Schmittinger & Rodriguez, P.A., Dover, Delaware; attorney for Plaintiffs.

James E. Drnec, Esquire and Katherine J. Sullivan, Esquire of Wharton Levin Ehrmantraut & Klein, P.A., Wilmington, Delaware; attorneys for Defendant Bayhealth Medical Center, Inc.

Bradley J. Goewert, Esquire and Catherine M. Cramer, Esquire of Marshall Dennehey Warner Coleman * Goggin, Wilmington, Delaware; attorneys for Defendant Milford Center, LLC.

WITHAM, R.J.

Bayhealth Medical Center, Inc. (hereafter "Bayhealth") has filed a Motion for Partial Dismissal against the medical negligence claim brought by Leona Clendaniel, individually and as the administratrix of Robert D. Clendaniel's estate, and Alice M. Metzner, individually, (hereafter "Plaintiffs") arguing that the Affidavit of Merit provided by Plaintiffs was not adequate. Bayhealth asserts that the expert provided by Plaintiffs is not properly qualified to render a medical opinion about the veracity of the claim because he is not a neurosurgeon. Bayhealth bases this assertion on the credentials noted in the *curriculum vitae* of Plaintiffs' expert, which was inadvertently served to Bayhealth via *LexisNexis*. This Court heard oral arguments of the parties on October 23, 2020. After considering the arguments of the parties, this Court denies Bayhealth's Motion for Partial Dismissal.

## Facts and Procedural History

Plaintiffs brought this medical negligence case because of the alleged wrongful death of Robert D. Clendaniel, which occurred on October 31, 2018. The claim of medical negligence was due to Plaintiffs' assertion that Bayhealth failed to provide Robert D. Clendaniel with adequate care while he was under the care of Bayhealth's Sussex and then later Kent campuses.

On June 18, 2018, an ambulance brought Robert D. Clendaniel to Bayhealth's Sussex Campus (hereafter "Sussex") for complaints of neck and shoulder pain. Robert D. Clendaniel was in the care of Sussex for approximately 48 hours and, during that time, Plaintiffs assert that Sussex should have administered a Magnetic Resonance Imaging (hereafter "MRI") study and performed a Posterior T1/2

2

laminectomy for evacuation of spinal hematoma.[1] Plaintiffs' complaint asserts that the inaction of Sussex led to a deterioration of spinal neurological function that resulted in paralysis.

On June 20, 2018, Robert D. Clendaniel was transferred to Bayhealth's Kent Campus (hereafter "Kent") where, Plaintiffs allege, negligent medical care led to the formation of a Coccyx Pressure Ulcer that ultimately brought about the onset of sepsis and finally Robert D. Clendaniel's death.

Plaintiffs filed the complaint for medical negligence along with an Affidavit of Merit on January 3, 2020. Bayhealth answered and filed a Motion to Test the Affidavit on January 27, 2020. On May 8, 2020, this Court found that the Affidavit of Merit did not comply on the grounds that it did not include a *curriculum vitae* and allowed Plaintiffs the opportunity to revise their Affidavit of Merit. On May 14, 2020, Plaintiffs filed a Revised Affidavit of Merit to include the *curriculum vitae* of her expert, and this Court found the revised affidavit acceptable on May 21, 2020. On May 27, 2020, Bayhealth filed a Motion for Partial Dismissal based on its assertion that Plaintiffs' expert does not meet the criteria set forth in 18 Del. C. § 6853©. This Court heard oral arguments on the motion on October 23, 2020.

In Plaintiffs' response, they stated that on May 14, 2020, the "plaintiffs' counsel's staff mistakenly and inadvertently electronically 'served' Defendants with the confidential revised Affidavit of Merit and *curriculum vitae*."[2] This disclosure

---

[1] According to the Mayo Clinic website, a laminectomy is a procedure that creates space within the spinal canal to relieve pressure on the spinal cord and nerves.

[2] Pl.'s Response to Def.'s Mot. at ¶ 6.

was discussed during oral arguments on the motion, and Plaintiffs explained that the inadvertent disclosure was due to not ensuring that, when the Affidavit of Merit was sent to this Court, the Court was the only recipient. Plaintiffs stated in their response that this inadvertent disclosure did not come to their attention until Bayhealth filed its Motion for Partial Dismissal and that at no time did Bayhealth make any effort to notify Plaintiffs about the disclosure.[3] During oral argument, Bayhealth's counsel confirmed the characterization of events as presented in Plaintiffs' response and during oral argument and admitted that no effort was made by Bayhealth to confirm with Plaintiffs' counsel whether this disclosure was intentional.

## Standard of Review

Delaware statute requires there be an Affidavit of Merit detailing the qualifications of a plaintiff's expert when bringing a medical negligence complaint. Specifically, 18 Del. C. § 6853© states that the affidavit shall provide the expert's reasonable belief to the Court that there was a breach of the standard of care and that breach was the proximate cause of the plaintiff's injuries; that the expert be licensed to practice medicine at least three years prior to signing the affidavit; and that the expert "has been engaged in the treatment of patients and/or in the teaching/academic side of medicine in the same or similar field of medicine as the defendant(s)."[4] Additionally, the plaintiff's expert must be Board Certified in the same fields of

---

[3] *Id.* at ¶¶ 6 and 7.

[4] 18 Del. C. § 8653©.

medicine if the defendant is also Board Certified.[5] The prima facie case for expert certification of a medical negligence complaint can be satisfied if "an Affidavit of Merit...contain[s] an expert's sworn statement that medical negligence occurred, along with confirmation that he or she is qualified to proffer a medical opinion."[6] "The Delaware statute...was designed to reduce the filing of meritless negligence claims, and the penalty for failing to comply is dismissal."[7]

The plaintiff's expert can only give opinions as to the applicable standards of care in those areas with which the expert is "familiar with the degree of skill ordinarily employed" in said areas.[8] "Qualifying as an expert for the purposes of [18 Del. C § 6854] does not require meticulous validation of the proffered expert's proficiency in a specific medical field."[9] The statutory requirement is such that it recognizes the need for some experts from one field of medicine to share a similar or common standard of care of doctors in other areas of medicine.[10]

The Affidavit of Merit is a confidential filing by the plaintiff to the Court and statutorily "shall be and shall remain sealed and confidential."[11] The acceptance of the Affidavit of Merit is at the Court's discretion, but a defendant can request that the

---

[5] *Id.*

[6] *Dishmon v. Fucci*, 32 A. 3d 338 at 342 (Del. 2011).

[7] *Hopkins v. Frontino*, 2012 WL 404961 at *1 (D. Del. Feb. 7, 2012).

[8] 18 Del. C. § 8654.

[9] *Dishmon*, 32 A. 3d at 343.

[10] *Vareha v. Bayhealth Medical Center, Inc.*, 2011 WL 2361270 at *6 (Del. Super. May 26, 2011).

[11] 18 Del. C. § 6853(a)(1).

Court make an in camera review for the affidavit's statutory compliance.[12] Confidential documents that have been inadvertently disclosed by one party to the other will lose their confidential status unless the Court determines that 1) there were reasonable precautions in place to prevent such disclosures; 2) there was a prompt attempt to rectify the disclosure; 3) the disclosure occurred as part of an extensive discovery; and 4) maintaining the document's confidentiality would be fair.[13] The Court's determination is fact specific when considering the above factors. For instance, proper procedures in safe-guarding confidential documents can include making the documents as such so that, if an inadvertent disclosure occurs, the receiving party would be on notice that the documents are confidential.[14] Likewise, "where document production is extensive...a finding that an inadvertent disclosure of privileged documents waives the attorney-client privilege or work-product protection does not advance the aim of full and free discovery."[15]

## Discussion

Bayhealth bases its Motion for Partial Dismissal on the notion that, because Dr. Terrance L. Baker (hereafter "Baker") is not specifically trained in neurosurgery or neurology, his Affidavit of Merit does not meet the criteria of Section 6853©.

---

[12] 18 Del. C. § 6853(d).

[13] *In Re Kent County Adequate Public Facilities Ordinances Litigation*, 2008 WL 1851790 at *5 (Del. Ch. April 7, 2008). See also *Monsanto Co. v. Aetna Casualty and Surety Co.*, 1994 WL 315238 at *6 (Del. Super. May 31, 1994).

[14] *Monsanto*, 1994 WL 315238 at *6.

[15] *Id.* (citations omitted.)

Plaintiffs object to Bayhealth's motion substantively and procedurally .

## Affidavit of Merit

This Court accepted the revised Affidavit of Merit including the *curriculum vitae* of Baker on May 21, 2020. In the affidavit, Baker swore that he has "been engaged in the treatment of patients in the same or similar field of medicine as the named Defendants."[16] Baker's *curriculum vitae* shows an extensive career in medicine with specific expertise in emergency medicine and general practice or family medicine.[17] However, Bayhealth asserts in its motion that "the affiant has no apparent specialized training or education in, is not board-certified in, and has never practiced in, the field of neurosurgery."[18]

The Plaintiffs allege medical negligence on the part of Bayhealth at its Sussex campus for 1) failure to timely examine; 2) failure to timely note and act during a 45-hour period; 3) failure to provide adequate medical care, diagnosis, and treatment, particularly in not performing an MRI after 45 hours; and 4) failure to perform a neurosurgical procedure.[19] The medical negligence alleged at the Kent campus is 1) failure to timely examine; 2) failure to adequately monitor and examine; 3) failure to timely diagnose; 4) failure to develop proper monitoring procedures; 5) erroneously diagnosing the coccyx wound; 6) failure to promptly and correctly comply with Robert D. Clendaniel's physicians' instructions related to the coccyx wound; and 7)

---

[16] Def.'s Mot. to Dismiss, Ex. C.

[17] *Id.*

[18] Def.'s Mot. to Dismiss at ¶ 8.

[19] Pl.'s Compl. at ¶ 12.

failure to properly and reasonably care for the coccyx wound.[20]

In his affidavit, Baker offered his opinion that "breaches of the standards of care include, but are not limited to, failure to timely diagnose and treat Plaintiff's spinal cord bleed, and failure to prevent, properly diagnose and treat Plaintiff's coccyx wound leading to [Robert D.] Clendaniel's death on 10/31/2018."[21] Further, Baker swears that he is engaged in "the same or similar field of medicine" as Bayhealth and is experienced in "emergency medicine" and treating nursing home patients and "end-of life patients."[22] Baker's opinion is relegated to diagnosing and treating the patient, not the actual procedure specified in the complaint. In other words, Plaintiffs' assertion is that Baker is well suited to make determinations of breach of standard of care when medical personnel are presented with a progressing medical condition that is left undiagnosed and untreated and the timeliness of ordering an MRI.

Bayhealth's argument that Baker is not a neurosurgeon and therefore cannot opine as to the standard of care a neurosurgeon would be measured during the act of performing the posterior T1/2 laminectomy misses the mark. Baker was not opining in that regard, but, rather, his opinion was with regard to whether such a diagnosis and treatment could have been discovered with a timely MRI. In fact, during oral argument the Plaintiffs made that exact argument, that the allegation of medical

---

[20] Id. at ¶ 14.

[21] Def.'s Mot. to Dismiss, Ex. C.

[22] *Id.*

malpractice was predicated more on conducting a timely MRI and not on performing posterior T1/2 laminectomy. This is a case about the actions taken by medical personnel during a present emergency in the first two days of that emergency more so than it is a case about a specific procedure. In this case, the totality of circumstances suggest that a doctor with the qualifications of Baker are capable of knowing and understanding the standards of care required for the "diagnosis and treatment of some medical problems [that] may be of concern to doctors' different specialties...among those doctors of different specialties."[23]

An additional point to address was brought up by Plaintiffs during oral argument on the motion. The two cases brought forth by Plaintiffs are *Ashley-Fry v. Bayhealth Medical Center, Inc.*[24] and *Delmarva Power & Light v. Stout.*[25] In *Ashley-Fry*, the appellant in that case was Bayhealth Medical Center, Inc. who was making a substantial evidence challenge to an Industrial Accident Board (hereafter "IAB") ruling in favor of the appellee. Bayhealth's argument in that case was that the IAB should not have accepted appellee's medical expert over their own because he "was not certified in the area of pain management."[26] The Board's acceptance of appellee's expert over that of Bayhealth's was to "provid[e] substantive evidence for the Board's findings."[27] In other words, the expert in *Ashley-Fry* was offering expert testimony,

---

[23] *Vareha*, 2011 WL 236270 at *6.

[24] *Ashley-Fry v. Bayhealth Medical Center, Inc.*, 2005 WL 730325 (Del. Super. Mar. 28, 2005).

[25] *Delmarva Power & Light v. Stout*, 380 A. 2d 1365 (Del. 1977).

[26] *Ashley-Fry*, 2005 WL 730325 at *3.

[27] *Id.*

which is treated differently than certifying through affidavit that a medical malpractice claim has merit.

This is further supported by the second case brought by Plaintiffs, *Delmarva Power & Light v. Stout*. In that case the Court stated plainly that "[i]t is settled in Delaware...that an experienced physician is an expert, and it is not required that he be a specialist in a particular malady at issue in order to make his testimony as an expert admissible."[28] Again the issue in that case was the expert's qualifications to give testimony, not to certify the merits of the claim.

Bayhealth points out that in *Ashley-Fry* the issue was not whether an expert from one specialty can opine as to the standard of care of another specialty, but whether the "plaintiff's medical prescription requirements were reasonable and necessary" for the purposes of continued workers' compensation benefits.[29] Bayhealth further distinguishes *Delmarva Power & Light* by acknowledging that the Court in that case allowed the expert's testimony because the expert had "considerable experience and expertise" in the field in question and treated the plaintiff.[30] Bayhealth bolsters their argument with regard to the *Delmarva Power & Light* case by citing *Good v. Bautista*[31] and *Werner v. Nanticoke Memorial Hospital, Inc., et.*

---

[28] *Delmarva Power & Light*, 380 A. 2d at 1369.

[29] Defendant's Letter to Chambers, October 23, 2020.

[30] *Id.*

[31] *Good v. Bautista*, 1987 WL 12439 (Del. Super. June 8, 1987).

10

al.[32] In both of those cases the Court held that competency to testify requires the expert to be one who "administers the same kind" of medical treatment when testifying as to standard of care.[33]

There is little doubt that, with regard to competency to testify as an expert, Bayhealth has successfully distinguished the cases brought forth by Plaintiffs during their oral argument. However, the circumstances of those cases cited cannot be ignored when attempting to apply the rationale of those cases to one where an Affidavit of Merit is involved. Delaware law is also settled on the question of whether the affiant must be from the exact same specialty as the defendant when rendering a sworn statement as to the merits of plaintiff's medical malpractice complaint. As has been referenced above through *Vareha v. Bayhealth Medical Center, Inc.*, medical specialists across disciplines can and often do share the same standard of care and it is not out of the ordinary for such specialists to be very familiar with the standard of care of other specialists. Bayhealth would argue that "nothing...would justify holding an emergency room physician to the standard of care of a neurologist simply because an emergency patient presents a possible neurological problem."[34] This is true with regard to admission of expert testimony, but as *Vareha* holds, this is not necessarily true when called upon to certify the merits of a complaint, and that is the sole purpose of 18 Del. C. § 6853. This Court believes that

---

[32] *Werner v. Nanticoke Memorial Hospital, Inc., et. al.*, 2005 WL 730325 (Del. Super. Mar. 28, 2005).

[33] *Good*, 1987 WL 12439 at *2.

[34] *Werner*, 2005 WL 730325 at *2.

11

Baker has met the standards of the statute just as this Court did on May 21, 2020.

### Inadvertent Disclosure

Plaintiffs note that Bayhealth is not entitled to challenge the contents of the affidavit. Section 6853(d) affords the defense the ability to request that the Affidavit of Merit be examined by the court in camera to ensure compliance with the requirements of the statute, but it does not entitle the defense the ability to examine the affidavit.[35] This section of the statute suggests that this is an in camera inspection, which Black's Law defines as "a trial judge's *private* consideration of evidence."[36] (Emphasis added.) As Plaintiffs note, Bayhealth was able to review the affidavit only because of an inadvertent disclosure of the *curriculum vitae* on the part of Plaintiffs' counsel.[37]

In this case, Bayhealth admits to receiving the Affidavit of Merit when the Plaintiffs' counsel filed the revised affidavit with this Court and did not ensure that the Court was the only recipient of the electronic filing. Bayhealth further admits to this being a strange occurrence and that normally a courtesy call to ensure that such a disclosure was meant by the other side would be made. However, in this instance, they failed to make such a call. Plaintiffs state that they only knew of the disclosure through the present motion. Bayhealth knows or should know that Sec. 6853(d)

---

[35] 18 Del. C. § 6853(d).

[36] Black's Law Dictionary (3rd ed. 2006).

[37] It should be noted that in other jurisdictions, where there is "no evidence of mistake or inadvertence," such disclosures could be seen as waiving any right to keep them out of sight of the opposing party. See *Fuller v. Preston State Bank*, 667 S.W. 2D 214 at 220 (Tex. App. Dec. 28, 1983).

makes affidavits of merit confidential and undiscoverable and should have acted immediately to notify Plaintiffs about the disclosure. But instead of acting, Bayhealth moved for partial dismissal of the complaint. It is clear that, but for this inadvertent disclosure, this motion would not be before this Court.

### Conclusion

A plaintiff's Affidavit of Merit, complete with an expert's curriculum vitae, is necessary for filing a medical malpractice complaint. Pleas to review the affidavit can be made by the defense, but the acceptance of the affidavit is solely the prerogative of the Court. This Court exercised that prerogative on May 21, 2020, and found it to be acceptable.

Finally, Affidavits of Merit are confidential and not discoverable to the defense. When confidential documents are mistakenly disclosed, Delaware recognizes certain criteria for declaring such confidentiality waived. However, Delaware also recognizes a certain amount of courtesy between adversarial parties should be exercised in such circumstances. This courtesy is lacking in this case, and this Court finds that Plaintiffs' disclosure was inadvertent and not a waiver of confidentiality.

WHEREFORE, given the circumstances of this case, this Court **DENIES** Defendant's Motion for Partial Dismissal on the basis of inadequate Affidavit of Merit. IT IS SO ORDERED.

/s/ *William L. Witham, Jr.*
Resident Judge

WLW/dmh

13